UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

OSVALDO ROJAS-SANCHEZ,

Petitioner,

-vs-                                                    Case No.  6:10-cv-991-Orl-19KRS
                                                              (6:07-cr-95-Orl-19KRS)

UNITED STATES OF AMERICA,

Respondent.

_____

# ORDER

This case comes before the Court on the following:

1.     Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 by Petitioner Osvaldo Rojas-Sanchez (Doc. No. 4, filed July 22, 2010);

2.     Response in Opposition to Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 by Respondent United States of America (Doc. No. 10, filed Oct. 5, 2010);

3.     Reply to Response to Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 by Petitioner Osvaldo Rojas-Sanchez (Doc. No. 12, filed Nov. 4, 2010); and

4.     Second Memorandum in Opposition to Government's Response by Petitioner Osvaldo Rojas-Sanchez (Doc. No. 13, filed Nov. 17, 2010).

**Background**

## I. Procedural History

Petitioner Osvaldo Rojas-Sanchez was charged in a two-count indictment with: (1) conspiracy to possess with intent to distribute one kilogram or more of a mixture and substance containing a detectable amount of heroin, in violation of 21 U.S.C. § 846, and (2) attempt to possess with intent to distribute one kilogram or more of a mixture and substance containing a detectable amount of heroin, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1). (Criminal Case No. 6:07-cr-95-Orl-19KRS, Doc. No. 1, filed Aug. 31, 2007).[1] An arrest warrant was issued for Petitioner, and Petitioner was extradited from the Republic of Colombia and brought before this Court to answer the charges. (Criminal Case Doc. No. 59 at 17, filed May 20, 2009.)

Petitioner entered into a written plea agreement and pled guilty before Magistrate Judge Karla R. Spaulding to Count I of the Indictment. (*Id.*; Criminal Case Doc. No. 61, filed May 27, 2009.) Magistrate Judge Spaulding entered a Report and Recommendation recommending that the guilty plea be accepted and that Petitioner be adjudicated guilty of Count I. (Criminal Case Doc. No. 64, filed May 27, 2009.) The Court accepted the plea, adjudicated Petitioner guilty as to Count I, and deferred ruling on acceptance of the plea agreement until the time of sentencing. (Criminal Case Doc. No. 68, filed June 3, 2009.) On August 31, 2009, a sentencing hearing was conducted, and the Court sentenced Petitioner, *inter alia*, to 87 months imprisonment and a three-year term of supervised release on Count I of the Indictment. (Criminal Case Doc. No. 87 at 2-3, filed Sept. 2, 2009.) Count II was dismissed pursuant to the Plea Agreement. (*Id.* at 8.)

---

[1] Criminal Case No. 6:07-cr-95-Orl-19KRS will be referred to as "Criminal Case."

Petitioner signed an Acknowledgment of Right to Appeal at the sentencing hearing. (Criminal Case Doc. No. 86, filed Aug. 31, 2009.) This document was read to Defendant in Spanish, it was explained to him orally by the Court, and Defendant was given the opportunity to discuss this document with his attorney before he signed it. (Criminal Case Doc. No. 122 at 4-7.) On September 22, 2009, the Court entered an Order noting that ten days had elapsed since the entry of judgment and that no notice of appeal had been filed ("Ten Day Order"). (Criminal Case Doc. No. 90.) The Ten Day Order directed Petitioner to file within ten days a declaration stating whether the election not to file a notice of appeal was informed and voluntary. (*Id.*) The Ten Day Order further stipulated that failure to respond as directed would be deemed an acknowledgment by Petitioner that the decision not to appeal was an informed and voluntary choice. (*Id.*) The Court did not receive a declaration from the Petitioner pursuant to the Ten Day Order.

On April 6, 2010, Petitioner filed a Notice of Inquiry in his criminal case, acknowledging that he had received the Ten Day Order on September 24, 2009. (Criminal Case Doc. No. 119 at 1.) According to Petitioner, he sent the Court a notice of appeal and a request for the appointment of counsel on September 24, 2009, and he did not receive any reply from the Court. (*Id.*) However, there is no record that such documents were received by the Court.

On July 22, 2010, Petitioner timely filed a motion to vacate, set aside, or correct an illegal sentence pursuant to 28 U.S.C. § 2255, asserting three grounds for relief: (1) ineffective assistance of counsel; (2) breach of the plea agreement by the Government; and (3) defective Indictment. (Doc. Nos. 1, 4.) The Government filed a response in opposition, (Doc. No. 10), and Petitioner filed a reply to the response. (Doc. No. 12.) Petitioner filed a second reply asserting that his base offense level was improperly calculated. (Doc. No. 13.)

On December 2, 2010, the Court entered an order reserving ruling on Petitioner's Section 2255 motion pending an evidentiary hearing on Petitioner's claims that his trial counsel, Andrew J. Chmelir, rendered ineffective assistance by failing to file a notice of appeal requested by Petitioner and failing to consult with Petitioner about filing an appeal. (Doc. No. 14.) On March 16, 2011, the Court conducted an evidentiary hearing on these claims.

## II. Testimony at Evidentiary Hearing

At the evidentiary hearing held on March 16, 2011, the Court received the following testimony from Petitioner and Mr. Chmelir.

### A. Osvaldo Rojas Sanchez

Petitioner testified that Chmelir met with him on several occasions at the Orange County Jail prior to his sentencing. According to Petitioner, Chmelir first discussed Petitioner's right to appeal at the meeting where an interpreter read the plea agreement in Spanish to Petitioner and then he and Chmelir reviewed the plea agreement. Petitioner maintained that Chmelir did not explain the sentence appeal waiver provision contained in the plea agreement, including that there were limited circumstances under which an appeal could be taken. Petitioner recalled that Chmelir advised him that he could not appeal if he signed the plea agreement. Petitioner also testified that when he asked Chmelir about the ten-year mandatory minimum sentence referenced in the plea agreement, Chmelir responded that it "could be fixed." Petitioner acknowledged that he alone made the decision to plead guilty pursuant to the plea agreement.

Despite testifying that Chmelir gave advice to Petitioner that he had no right to appeal under the plea agreement, Petitioner testified that he first told Chmelir that he wanted to appeal at a subsequent meeting in July 2009 where he and Chmelir discussed Petitioner's presentence report

("PSR").  The PSR recommended a sentence of 87 - 108 months.  Petitioner claimed that he told

Chmelir that a sentence of 87 months was "too much time," and that Chmelir responded, "I will fix

it."  Petitioner recalled telling Chmelir that if 87 months was to be his sentence, he wanted to appeal.

Petitioner conceded that he did not instruct Chmelir to file an appeal at this meeting.

Petitioner testified that at some unspecified point prior to sentencing, he asked Chmelir if

he could be considered a "minor participant" to receive a lower sentence.  According to Petitioner,

Chmelir replied that a role reduction for being a "minor participant" was up to the judge and that he

would not seek a role reduction at sentencing.

Petitioner recalled signing the Acknowledgment of Right to Appeal at his sentencing on

August 31, 2009, although he maintained that he did not understand what he was signing.  At the

same time, Petitioner acknowledged that the Acknowledgment of Right to Appeal was read to him

in Spanish before he signed the form, and Petitioner admitted signing the form "like any other

paper."  Petitioner also testified that he did not recall the Court explaining the right to appeal during

his sentencing proceeding.

Petitioner stated that after his sentence was pronounced, Chmelir did not speak to him about

appealing and did not visit him at the Orange County Jail.  Petitioner acknowledged that contrary

to the allegations under oath in his Section 2255 Motion, (Doc. No. 4 at 15), and his April 6, 2010

Notice of Inquiry, (Criminal Case Doc. No. 119 at 2), he did not instruct Chmelir to file a notice of

appeal after his sentencing.  Further, Petitioner testified that he did not request Chmelir to visit him

in jail after sentencing but believed that Chmelir would do so.

Petitioner asserted that he received the Ten Day Order while incarcerated at the Orange

County Jail on September 24, 2009, and that on the same day, he wrote and mailed two letters in

English to this Court.  Petitioner testified that the first letter requested an appeal and that the second letter requested an attorney fluent in Spanish.  Petitioner recalled mailing the letters by handing them through his cell door to a corrections officer collecting outgoing mail.  Petitioner testified that the letters were not returned to him.  Petitioner conceded taking no action to confirm the status of his appeal between writing the two letters in September 2009 and submitting the Notice of Inquiry to the Court in April 2010.

### B.  Andrew J. Chmelir

Chmelir testified that he visited Petitioner approximately eight times at the Orange County Jail prior to his sentencing and that he spoke to Petitioner at the courthouse before each of his court hearings.  Chmelir testified that an interpreter read Petitioner's plea agreement to him in Spanish before Chmelir arrived at the meeting to discuss the plea agreement and that the interpreter assisted Chmelir to communicate with Petitioner.  During the meeting, Chmelir read and explained the plea agreement to Petitioner line by line.  Chmelir asserted that he stopped reading every few lines to ask Petitioner questions to confirm his understanding and that Petitioner's responses indicated that he understood the terms of the plea agreement.  Chmelir explained that the same procedure was used to explain the PSR to Petitioner at a subsequent meeting.

Chmelir considered the appeal waiver the most crucial part of the plea agreement.  He recalled explaining to Petitioner "verbatim" the limited appellate rights he retained under the plea agreement at a meeting before the plea agreement was signed.  Chmelir also informed Petitioner that he could plead guilty without the plea agreement, but in that case, the Government was free to oppose the application of the safety valve under 18 U.S.C. § 3553(f), without which Petitioner was subject to a ten-year mandatory minimum sentence.  Chmelir further recalled that at a meeting on

August 29, 2009, two days prior to sentencing, he reiterated that if Petitioner received a sentence within the guideline range, he would have no right to appeal the sentence pursuant to the plea agreement.

Prior to the issuance of the PSR and the plea hearing, Chmelir estimated the exact sentencing guideline range provided in the PSR and communicated that range to Petitioner. According to Chmelir, he told Petitioner than his estimated sentence of 87 months was a good sentence given Petitioner's eligibility for a ten-year mandatory minimum sentence, and Petitioner agreed.

Chmelir recounted the sentencing strategy that he and Petitioner discussed. After the PSR was issued, Chmelir told Petitioner that he thought that the sentencing recommendation in the PSR was very favorable given the offense conduct admitted in Petitioner's plea agreement. Chmelir imparted to Petitioner that although the Government agreed in the plea agreement not to oppose the application of the safety valve and although the safety valve was recommended in the PSR, the Court retained discretion to disregard that recommendation in light of Petitioner's offense conduct. Based on these considerations, Chmelir told Petitioner that he planned to avoid sentencing arguments that drew attention to facts potentially warranting a higher sentence and to focus on other mitigating factors so that the Court would not *sua sponte* increase the guideline range by adding points for Petitioner's role in the offense or by disallowing application of the safety valve provision.[2]

---

[2] In the plea agreement, Petitioner admitted to directing a confidential source to import heroin from Colombia into the United States on two occasions. (Criminal Case Doc. No. 59 at 15-17.) Petitioner also acknowledged that he permitted the confidential source to sell the second smuggled quantity of heroin in the United States. (*Id.* at 17.) In view of these admitted facts, Petitioner was potentially eligible for a role enhancement as an organizer, leader, manager, or supervisor under U.S.S.G. § 3B1.1(c). If found to qualify for a role enhancement under U.S.S.G. § 3B1.1(c), Petitioner would have been ineligible for the safety valve. *See* U.S.S.G. § 5C1.2(a)(4) (noting that a sentence below the applicable statutory minimum cannot be imposed where the

(continued...)

-7-

To that end, Chmelir suggested that Petitioner collect favorable reference letters emphasizing Petitioner's exemplary life and lack of criminal history from family and friends in Colombia to be presented to the Court at sentencing.  Chmelir also went over the sentencing memorandum that he intended to present to the Court on behalf of Petitioner.  Chmelir testified that Petitioner agreed with this strategy and approved the proposed sentencing memorandum.[3]

Chmelir asserted that he arrived at the sentencing hearing early to explain the Acknowledgment of Right to Appeal form to Petitioner.  Chmelir witnessed an interpreter read the Acknowledgment of Right to Appeal form to Petitioner in Spanish, and Chmelir did not recall Petitioner asking any questions when the form was read and explained to him.  Chmelir testified that at no time prior to, during, or after sentencing did Petitioner instruct him to file an appeal or express any interest in appealing.  Chmelir further stated that Petitioner never told him prior to sentencing that he wanted to appeal if he received a sentence of 87 months.  Chmelir also contended that had Petitioner asked him to appeal, he would have filed an *Anders* brief because there were no meritorious issues for appeal.

Chmelir recalled that he and Petitioner got along well, that Petitioner never expressed displeasure with his work, that Petitioner hugged Chmelir, and that Petitioner invited Chmelir to pray with him at their meetings.  Chmelir explained that he did not meet with Petitioner after sentencing to discuss an appeal because he and Petitioner had talked about Petitioner's appeal rights many times prior to sentencing.

---

(...continued)
defendant was "an organizer, leader, manager, or supervisor of others in the offense . . . ."); *accord* 18 U.S.C. § 3553(f)(4) (same).

[3] Such letters and the sentencing memorandum, (Criminal Case Doc. No. 79), were presented to the Court for consideration at sentencing.

**Standard of Review**

**I.      Relief**

Section 2255 provides federal prisoners with an avenue for relief under limited circumstances:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.  If a court finds a claim under Section 2255 to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  *Id.*  To obtain this relief on collateral review, however, a petitioner must clear a significantly higher hurdle than would exist on direct appeal.  *See United States v. Frady*, 456 U.S. 152, 166 (1982) (rejecting the plain error standard as not sufficiently deferential to a final judgment).

**II.     Hearing**

Under Section 2255, unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the court shall "grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."  The Eleventh Circuit Court of Appeals has explained, "[a] habeas corpus petitioner is entitled to an evidentiary hearing on his claim 'if he alleges facts which, if proven, would entitle him to relief.'"  *Smith v. Singletary*, 170 F.3d 1051, 1053 (11th Cir. 1999) (quoting *Futch v. Dugger*, 874 F.2d 1483, 1485 (11th Cir. 1989)).  However, "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."

*Schriro v. Landrigan*, 550 U.S. 465, 474 (2007); *see also Aron v. United States*, 291 F.3d 708, 715 (11th Cir. 2002) (explaining that no evidentiary hearing is needed when a petitioner's claims are "affirmatively contradicted by the record" or "patently frivolous").

## Analysis

### I.  Sentence-appeal Waiver

Pursuant to the sentence-appeal waiver provision of Petitioner's plea agreement, Petitioner agreed that:

> this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and *expressly waives the right to appeal [his] sentence or to challenge it collaterally on any ground*, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds [his] applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then [Petitioner] is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

(Criminal Case Doc. No. 59 at 12-13 (emphasis added).)  Before determining whether the sentence-appeal waiver bars Petitioner's claims here, it is appropriate to determine whether the sentence-appeal waiver is valid.

### A.  Validity of Sentence-appeal Waiver

Sentence-appeal waivers are valid if made knowingly and voluntarily.  *Williams v. United States*, 396 F.3d 1340, 1341 (11th Cir. 2005).  "To establish the waiver's validity, the government must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully

understood the significance of the waiver." *United States v. Weaver*, 275 F.3d 1320, 1333 (11th Cir. 2001).

During the plea colloquy, Petitioner identified his plea agreement, acknowledged that he read and understood the terms of his plea agreement, and confirmed that he discussed his plea agreement with counsel:

> THE COURT: I have a document entitled plea agreement.  I'm going to ask Mr. Jackson to hand it to you.  I just want to make sure it is your plea agreement, that you've initialed every page, any change, and signed the last page. There are some filing pages at the back, so don't worry about those.
>
> THE DEFENDANT (Through Interpreter): Yes, it is the same document.
>
> THE COURT: All right.  Is that the plea agreement of the United States?
>
> MR. CITRO: Yes, Your Honor, it is.
> . . .
> THE COURT: . . . Was the plea agreement translated into Spanish for you before you signed it?
>
> THE DEFENDANT (Through Interpreter): Yes, ma'am.
>
> THE COURT:  Did you talk with Mr. Chmelir about the plea agreement before you signed it?
>
> THE DEFENDANT (Through Interpreter): Yes, ma'am.
>
> THE COURT: Do you believe you understand the plea agreement?
>
> THE DEFENDANT (Through Interpreter): Yes, ma'am.

(Criminal Case Doc. No. 124 at 9-10.)  Petitioner further acknowledged his understanding that he would be waiving certain rights by entering into the plea agreement, including the right to collaterally attack his sentence except in limited circumstances:

> THE COURT: Turning over to the bottom of page 12 of the plea agreement, it talks about your right to appeal or challenge your sentence, and I want to review that with you.

First, if you plead guilty, you are admitting for all time the committed the crime. You give up any defenses or excuses you may have, and you give up the right to come back to this court or go to another court later on and argue that you shouldn't have been found guilty.  The right to come back to this court or go to another court is called the right to appeal, so if you plead guilty, you have no right to appeal from the finding that you are guilty.

If you think the judge makes a mistake in the sentence you receive though, you usually do have the right to ask another court to correct that mistake.  You can appeal the sentence, it's called a direct appeal, to the next higher court, or you can do something we call collaterally challenging the sentence, usually under a federal statute called 28 United States Code, Section 2255.  Under the plea agreement, you're giving up some of your rights to appeal from or collaterally challenge a mistake in your sentence.  You can only do that if the sentence is above the guideline range as determined by the court[, i]f the sentence is more than the maximum permitted by the law, if the sentence violates the Eighth Amendment to the Constitution which is your protection against cruel and unusual punishment, or if the United States appeals from your sentence, then you could appeal for any reason.  Do you understand how that limits your right to appeal from or challenge a mistake in your sentence?

THE DEFENDANT (Through Interpreter): Yes, ma'am.

THE COURT: Is that a right you're willing to give up?

THE DEFENDANT (Through Interpreter): Yes, ma'am.

(*Id.* at 15-16.)

The Court also advised Petitioner during the plea colloquy that he was not required to plead guilty and that he had the right to go to trial.  (*Id.* at 22.)  Petitioner acknowledged that he would lose those rights upon pleading guilty.  (*Id.* at 23.)  In addition, Petitioner declared that he was not threatened in any way to plead guilty.  (*Id.* at 8.)

In light of the thorough and comprehensive plea colloquy, during which Petitioner was specifically questioned about the sentence-appeal waiver and voluntarily acknowledged his understanding of the sentence-appeal waiver, the Court finds that the sentence-appeal waiver is valid.

### B. Effect of Valid Sentence-appeal Waiver

Finding that the sentence-appeal waiver is valid, the Court must determine whether Petitioner's claims are barred by the sentence-appeal waiver.  The plea agreement prohibits Petitioner from collaterally challenging his sentence on any ground except "(a) the ground that the sentence exceeds [his] applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds that statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution." (Criminal Case Doc. No. 32 at 13.)  This sentence-appeal waiver not only bars challenges to the sentence itself, but also claims that counsel was ineffective during sentencing.  *See Williams*, 396 F.3d at 1352 ("[A] valid sentence-appeal waiver, entered into voluntarily and knowingly, pursuant to a plea agreement, precludes the defendant from attempting to attack, in a collateral proceeding, the sentence through a claim of ineffective assistance of counsel during sentencing. . . . [A] contrary result would permit a defendant to circumvent the terms of the sentence-appeal waiver simply by recasting a challenge to his sentence as a claim of ineffective assistance, thus rendering the waiver meaningless.").

Petitioner claims that his counsel was ineffective for failing to argue during sentencing that: (1) Petitioner was eligible for a reduction in his offense level for "minimal" or "minor" participation in the drug conspiracy; (2) Petitioner's sentence was procedurally and substantively unreasonable when compared to similarly situated offenders; and (3) Petitioner was entitled to a "90-day downward departure" under 8 U.S.C. § 1231(a)(1)(A).  (Doc. No. 4 at 23-27.)  These three claims of ineffective assistance of counsel during sentencing are barred by the sentence-appeal waiver. *Williams*, 396 F.3d at 1352.  In any case, as discussed *infra* part III.D, these claims fail on the merits.

-13-

## II. Procedural Default

A defendant who fails to object at the trial court level to error he believes the court has committed or fails to raise such objection on appeal is procedurally barred from presenting his objection in a motion subsequently filed under 28 U.S.C. § 2255 absent a showing of (1) cause and prejudice or (2) a fundamental miscarriage of justice. *United States v. Frady*, 456 U.S. 152, 166-68 (1982); *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994). In order to show cause, a petitioner must show some external impediment preventing counsel from constructing or raising the claim. *High v. Head*, 209 F.3d 1257, 1262-63 (11th Cir. 2000). "Such external impediments include evidence that could not reasonably have been discovered in time to comply with the rule; interference by state officials that made compliance impossible; and ineffective assistance of counsel at a stage where the petitioner had a right to counsel." *Mize v. Hall*, 532 F.3d 1184, 1190 (11th Cir. 2008) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Prejudice exists if "'there is at least a reasonable probability that the result of the proceeding would have been different' had the constitutional violation not occurred." *Id.* (quoting *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003)). Absent cause and prejudice, the procedural default of a constitutional claim may be excused only if enforcing the default would result in a fundamental miscarriage of justice. *Id.* This exception applies if the petitioner can show that, in light of new evidence, it is probable that no reasonable juror would have convicted him. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Petitioner's Section 2255 Motion raises four grounds for relief: (1) ineffective assistance of counsel; (2) breach of the plea agreement by the Government; (3) defective indictment; and (4) improper calculation of base offense level. Petitioner's claims of ineffective assistance of counsel and breach of the plea agreement are properly raised for the first time in the instant Section 2255

Motion. *See United States v. Al-Arian*, 514 F.3d 1184, 1191 (11th Cir. 2008) ("[A] § 2255 motion may be used to enforce promises made in a plea agreement.") (citations omitted); *United States v. Merrill*, 513 F.3d 1293, 1308 (11th Cir. 2008) ("[A]n ineffective assistance of counsel claim is properly raised in a collateral attack on the conviction under 28 U.S.C. § 2255." (quoting *United States v. Butler*, 41 F.3d 1435, 1437 n.1 (11th Cir. 1995))).  Petitioner's claims of defective indictment and improper base offense level calculation could have been raised on direct appeal, but Petitioner failed to do so.  Thus, those claim are procedurally barred absent a showing of cause and prejudice or a fundamental miscarriage of justice.  *Mills*, 36 F.3d at 1055.

Petitioner does not squarely address the elements of procedural default.  However, even if Petitioner could establish an excuse for procedural default, Petitioner is not entitled to relief on his claims of defective indictment and incorrect base offense level calculation because they have no merit.  *See infra* parts V-VI.

## III.  Ineffective Assistance of Counsel

Petitioner asserts that his trial counsel was ineffective for: (1) failing to file a notice of appeal upon Petitioner's request, (Doc. No. 4 at 15); (2) failing to consult with Petitioner about appealing, (Doc. No. 12 at 4); (3) failing to properly negotiate the plea agreement, (*id.* at 18-20); (4) failing to present mitigating factors at sentencing, (*id.* at 23-27); and (5) failing to advise Petitioner of the effect of U.S.S.G. § 1B1.3 on his sentence, (Doc. No. 12 at 5-7).

To prevail on a claim of ineffective assistance of counsel, Petitioner must show that: (1) "counsel's representation fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 688 (1984), and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

-15-

These two elements are commonly referred to as the performance and prejudice prongs, respectively. *Reece v. United States*, 119 F.3d 1462, 1464 n.4 (11th Cir. 1997).  If Petitioner fails to establish either prong, the Court need not consider the other prong in finding that there was no ineffective assistance of counsel.  *Strickland*, 466 U.S. at 697.  As discussed below, each of Petitioner's ineffective assistance of counsel claims fails for want of either deficient performance by counsel or prejudice to Petitioner from counsel's performance.

### A.  Failure to File Notice of Appeal as Directed

It is well-settled that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (citations omitted).  In such case, prejudice is presumed, and the petitioner is entitled to a new appeal without any further showing.  *See id.* at 483 ("The . . . denial of the entire judicial proceeding itself, which a defendant wanted at the time and to which he had a right, . . . demands a presumption of prejudice."); *id.* at 485 (noting that *Flores-Ortega* was consistent with *Rodriguez v. United States*, 395 U.S. 327, 329-30 (1969), where a defendant who instructed counsel to perfect an appeal thereby objectively indicated his intent to appeal and was entitled to a new appeal upon counsel's failure to perfect an appeal without any further showing); *Peguero v. United States*, 526 U.S. 23, 28 (1999) ("[W]hen counsel fails to file a requested appeal, a defendant is entitled to [a new] appeal without showing that his appeal would likely have had merit.").  These rules apply with equal force when a petitioner waives some but not all of his appellate rights through a plea agreement.  *Gomez-Diaz v. United States*, 433 F.3d 788, 793-94 (11th Cir. 2005).

It is undisputed that Petitioner never actually directed Chmelir to file a notice of appeal. Petitioner admitted at the evidentiary hearing that, contrary to the allegations in his Section 2255

Motion, he did not instruct Chmelir to file a notice of appeal "immediately" after his sentencing. (Doc. No. 4 at 15.)  Petitioner also conceded that he never instructed Chmelir to file a notice of appeal, and Chmelir testified that Petitioner never instructed him to file a notice of appeal.  Absent any evidence that Petitioner instructed Chmelir to file a notice of appeal, Chmelir was not ineffective for failing to file a requested notice of appeal.  *Flores-Ortega*, 528 U.S. at 477.

### B.  Failure to Consult About Appealing

Where a client does not issue specific instructions to counsel to file a notice of appeal, "a court must inquire whether the attorney consulted with the client regarding the advantages and disadvantages of appealing and made a reasonable effort to determine the client's wishes." *Gomez-Diaz*, 433 F.3d at 792 (citing *Flores-Ortega*, 528 U.S. at 478).  When a sufficient consultation takes place, the attorney's performance is professionally unreasonable only if the client's express instructions are not followed.  *Id.* (citing *Flores-Ortega*, 528 U.S. at 478).

If the attorney does not sufficiently consult with the client regarding the filing of an appeal, the inquiry proceeds to whether counsel had a duty to undertake such a consultation.  *Id.*  The United States Supreme Court has outlined the parameters of such a duty as follows:

> [C]ounsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

*Flores-Ortega*, 528 U.S. at 480.  "In making this determination, courts must take into account all the information counsel knew or should have known."  *Id.* (citation omitted).  A highly relevant factor will be whether the conviction was the result of a guilty plea because a guilty plea reduces the scope of appealable issues and may indicate that the defendant seeks an end to judicial proceedings.

*Id.* Even in cases when the defendant pleads guilty, the Court must consider whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights.  *Id.*

In the event that counsel's performance is found to be deficient for failure to consult, a finding of ineffective assistance for failure to consult also requires a showing of prejudice.  *E.g.*, *Thompson v. United States*, 504 F.3d 1203, 1208 (11th Cir. 2007).  "[T]o show prejudice, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed."  *Flores-Ortega*, 528 U.S. at 484.  The "would have appealed" standard considers all of the circumstances, including whether there were nonfrivolous grounds for appeal and whether the defendant in question promptly expressed a desire to appeal.  *Id.* at 485.  A defendant's expression of an interest in appealing, without more, does not establish that he would have appealed but for counsel's deficient performance.  *Id.* at 486.

Chmelir adequately consulted with Petitioner about appealing through his pre-sentencing conversations with Petitioner.  He explained Petitioner's limited appellate rights under the plea agreement, and he made reasonable efforts to discover Petitioner's wishes regarding an appeal.  *See Flores-Ortega*, 528 U.S. at 478 (holding that an attorney adequately consults with a defendant about appealing by "advising the defendant about the advantages and disadvantages of taking an appeal[] and making a reasonable effort to discover the defendant's wishes").  Before Petitioner signed his plea agreement, Chmelir explained "verbatim" to Petitioner the limited appellate rights he retained

under the plea agreement.[4]  Chmelir also testified that he discussed with Petitioner the advantages and disadvantages of signing the plea agreement limiting his appeal rights, most notably the Government's stipulation not to oppose the safety valve, the application of which would avoid a ten-year mandatory minimum sentence.[5]  Chmelir also remembered telling Petitioner that based on his plea agreement, he estimated that Petitioner would receive an 87 month sentence.  Chmelir's estimate was consistent with the sentencing range contained in the PSR and was the sentence actually imposed by the Court.

Petitioner testified that at the meeting with Chmelir to review the PSR, he told Chmelir that a sentence of 87 months was "too high" and that he wanted to appeal if his actual sentence was 87 months.[6]  In contrast, Chmelir testified that Petitioner never expressed any interest in appealing and in fact concurred with Chmelir that an 87 month sentence was favorable in light of the potential ten-year mandatory minimum sentence.  Chmelir also recalled that Petitioner agreed with Chmelir's strategy at sentencing to minimize the possibility that the Court *sua sponte* find the safety valve inapplicable due to Petitioner's offense conduct admitted in the plea agreement.  After carefully considering the evidence, listening to the witnesses, and viewing the witnesses and their demeanor while testifying, the Court finds Chmelir's testimony more credible than Petitioner's testimony about what was said in the meetings prior to Petitioner's sentencing.  *See Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1559 (11th Cir. 1988) ("Assessing the weight of evidence and credibility of

_____

[4] The Court rejects Petitioner's assertion that Chmelir advised him that he had no right to appeal once he signed the plea agreement, finding the testimony of Chmelir more credible.

[5] During his plea colloquy, Petitioner acknowledged that he and Chmelir discussed the requirements to qualify for the safety valve.  (Criminal Case Doc. No. 124 at 12.)

[6] This testimony is somewhat inconsistent with Petitioner's assertion that Chmelir previously had told him that he had no right to appeal upon signing the plea agreement.

witnesses is reserved for the trier of fact."). Therefore, the conflicting testimony between Chmelir and Petitioner regarding their pre-sentencing conversations is resolved in favor of Chmelir's version of events.

Two days prior to sentencing, Chmelir met with Petitioner and reiterated that if he received a sentence within his guideline range, he could not appeal the sentence pursuant to the plea agreement. Petitioner then received the predicted minimum guideline sentence of 87 months imprisonment. Based on Chmelir's extensive pre-sentencing conversations with Petitioner, Chmelir's prediction of an 87 month sentence, which was favorably considered by Petitioner, the resulting 87 month sentence actually imposed, and the inability of Petitioner to appeal that sentence pursuant to the plea agreement, Chmelir adequately consulted with Petitioner about appealing. *See Molano Salas v. United States*, No. 8:05-cv-1685-T27TBM, 2007 WL 294231, at *3 (M.D. Fla. Jan. 29, 2007) (finding that counsel adequately consulted with the petitioner about appealing based on their pre-sentence discussions of the advantages and disadvantages of appealing, petitioner's desire not to appeal if a particular sentence was imposed, and the imposition of the sentence expected by the petitioner).

For the sake of thorough discussion, even assuming that Chmelir's pre-sentencing discussions with Petitioner did not satisfy the duty to consult, Chmelir had no duty to consult with Petitioner about appealing because a rational defendant in Petitioner's position would not want to appeal and because Petitioner did not reasonably demonstrate an interest in appealing. *Flores-Ortega*, 528 U.S. at 480. A rational defendant in Petitioner's position would not want to appeal where, as here, he received a favorable sentence that he and counsel predicted would be imposed and, as discussed *infra* parts IV-VI, there were no non-frivolous grounds for appeal. *See Molano*

*Salas*, 2007 WL 294231, at *3 ("[Counsel] fairly concluded that Petitioner, acting rationally would not want to appeal since the Court imposed a sentence which they expected [and] [t]here were no non-frivolous grounds for appeal.").  This is particularly true where the Petitioner pled guilty pursuant to a plea agreement in which he forfeited his right to appeal a guideline sentence and then received a guideline sentence adopting all of the government's sentencing recommendations embodied in the plea agreement.  (Criminal Case Doc. No. 59 at 12-13); *Flores-Ortega*, 528 U.S. at 480 (considering as relevant factors whether the conviction follows a guilty plea and whether the plea expressly waived some appeal rights).   In addition, based on the Court's credibility determinations above, Petitioner did not actually inform or indicate to counsel that he wished to appeal if he received the contemplated 87 month sentence.   Absent any evidence of record suggesting that a rational defendant would have wanted to appeal or that Petitioner actually expressed an interest in appealing, Chmelir had no duty to consult with Petitioner about appealing. *Flores-Ortega*, 528 U.S. at 480.

      Finally, even if Chmelir had a duty to consult with Petitioner about appealing and failed to do so, Petitioner has not demonstrated prejudice by showing that "but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484.  As discussed *infra* parts IV-VI, Petitioner has not identified, and the Court does not find, any non-frivolous grounds for appeal.  In addition, Petitioner did not express any interest in appealing to counsel, and he did not file a notice of appeal on his own behalf despite being informed by the Court during the sentencing hearing and in the Acknowledgment of Right to Appeal form that he could file an appeal through counsel or by himself.  (Criminal Case Doc. No. 86 at 1; Doc. No. 122 at 6.)

Although Petitioner asserted that he mailed a notice of appeal to the Court on September 24, 2009, the same day he received the Ten Day Order, the Court does not find this testimony credible. There is no record that the Court received either of the letters that Petitioner allegedly mailed to the Court on September 24, 2009.  Petitioner's assertion that he filed two letters in response to the Ten Day Order is further belied by his admitted failure to take any action regarding his appeal between September 24, 2009, the day he allegedly mailed the letters, and April 6, 2010, the date he filed a Notice of Inquiry with the Court regarding the status of his appeal.  (Criminal Case Doc. No. 119.) There is no credible evidence of record suggesting that Petitioner was interested in appealing prior to April 2010, at which point the deadline to appeal had passed.  Accordingly, Petitioner has not met his burden of showing that "but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Flores-Ortega*, 528 U.S. at 484.

In summary, Chmelir did not deficiently fail to consult with Petitioner about appealing, and Petitioner was not prejudiced by Chmelir's actions.  Therefore, Petitioner's claim that Chmelir was ineffective for failing to consult with him about filing an appeal is without merit.

### C.  Failure to Properly Negotiate Plea Agreement

Petitioner argues that Chmelir was ineffective for negotiating a plea agreement containing the following provisions: (1) that the Court would not be bound by any recommendations, stipulations or requests made by the parties as set forth in paragraph 11 of the plea agreement; (2) that pursuant to U.S.S.G. § 1B1.8(a), no self-incriminating information provided by the defendant during his cooperation would be used in determining the applicable sentencing guideline range as set forth in paragraph 12 of the plea agreement; (3) that the Government retained sole discretion to determine whether Petitioner provided substantial assistance as set forth in paragraph 11 of the plea

agreement; (4) that the Government was not required to make any sentencing recommendation if Petitioner did not provide full, accurate, and complete disclosures to the Government as set forth in paragraph 13 of the plea agreement; and (5) that the Government was permitted to use information disclosed by Petitioner against him in future prosecutions pursuant to paragraph 13 of the plea agreement.  (Doc. No. 4 at 18-20.)

"The burden of persuasion is on a petitioner to prove, by a preponderance of competent evidence, that counsel's performance was unreasonable." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (citations omitted).  Petitioner does not assert any facts from which it can reasonably be inferred that Chmelir's performance was deficient in negotiating a plea agreement with these provisions.  "[W]here the record is incomplete or unclear about counsel's actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment." *Id.* at 1314 n.15 (quotation omitted).  Further, Petitioner has not shown that he was prejudiced by the inclusion of these provisions in his plea agreement.  Therefore, Petitioner's claim of ineffective assistance of counsel in the negotiation of his plea agreement is without merit.

### D.  Failing to Argue Mitigating Factors at Sentencing

Petitioner argues that Chmelir was ineffective at sentencing because: (1) Chmelir failed to seek a "minimal" or "minor" participant reduction; (2) Chmelir failed to argue that the sentence was procedurally and substantively unreasonable; and (3) Chmelir failed to seek a 90-day downward departure under 8 U.S.C. § 1231(a)(1)(A).  (Doc. No. 4 at 23-27.)  As discussed *supra* part I.B, these claims of ineffective assistance of counsel during sentencing are barred by Petitioner's valid sentence-appeal waiver.  In any case, Chmelir was not ineffective for failing to raise these arguments at sentencing for the reasons discussed below.

### 1. "Minimal" or "Minor" Participant

Petitioner first maintains that counsel was deficient for failing to argue in favor of a downward adjustment under U.S.S.G. § 3B1.2 on the ground that Petitioner was a "minimal" or "minor" participant in the offense conduct.  (Doc. No. 4 at 23; Doc. No. 12 at 1-3.)

Section 3B1.2 of the Guidelines provides:

Based on the defendant's role in the offense, decrease the offense level as follows:

(a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.

(b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.

In cases falling between (a) and (b), decrease by 3 levels.

U.S.S.G. § 3B1.2.

The determination of mitigating role in the offense "is heavily dependent upon the facts of the particular case."  U.S.S.G. § 3B1.2, cmt. 3(C).  The defendant has the burden of establishing his role in the offense by a preponderance of the evidence. *United States v. Alvarez-Coria*, 447 F.3d 1340, 1343 (11th Cir. 2006) (citing *United States v. De Varon*, 175 F.3d 930, 937 (11th Cir. 1999)). "[I]n determining a defendant's role in the offense, a district court must measure the defendant's role against the relevant conduct attributed to her in calculating her base offense level." *Rodriguez de Varon*, 175 F.3d at 943-44.  "[T]he district court may also measure the defendant's culpability in comparison to that of other participants in the relevant conduct."  *Id.* at 944.  "In the drug courier context, examples of some relevant factual considerations include: amount of drugs, fair market value of drugs, amount of money to be paid to the courier, equity interest in the drugs, role in planning the criminal scheme, and role in the distribution."  *Id.* at 945.

Because Petitioner's offense conduct admitted in his plea agreement[7] does not support a finding that he was a "minimal" or "minor" participant, Petitioner was not prejudiced by Chmelir's failure to argue for either role reduction at sentencing.  Petitioner acknowledged responsibility for conspiring to smuggle 5,791 grams of heroin and 1,962 grams of cocaine hydrochloride into the United States.  (Criminal Case Doc. No. 59 at 18.)  Petitioner requested that a confidential source transport drugs from Colombia to the United States for a Colombian drug trafficking organization.  (*Id.* at 15.)  With Petitioner's encouragement, the confidential source traveled to Colombia, and Petitioner was responsible for setting up the transfer of drugs from Colombian traffickers to the confidential source.  (*Id.* at 15-16.)  Petitioner subsequently asked the confidential source to transport heroin to the United States for a second drug trafficking organization.  (*Id.* at 16.)  In addition, Petitioner authorized the confidential source to sell the smuggled heroin in the United States.  (*Id.* at 17.)  Thereafter, Petitioner met with the confidential source and others to arrange the transport of cocaine into the United States.  (*Id.*)  Based on the amount of drugs and Petitioner's role in the criminal scheme establishing that Petitioner was neither a "minimal" nor "minor" participant,

---

[7] Petitioner acknowledged to the Court during his plea colloquy that the facts contained in the plea agreement were true and correct:

> THE COURT: All right.  Mr. Rojas-Sanchez, Mr. Citro has summarized for me facts that are written in a little more detail starting on page 15 of the plea agreement.  What I need to know is whether what he told me and the facts as written in the plea agreement are true, to the extent they talk about what you did and what you knew, and I'm happy to have Miss Cruz read them for you again if you would like for her to do that.

> THE DEFENDANT (Through Interpreter): Yes, ma'am.  We already read page 15, 16, 17, and it is correct.

(Criminal Case Doc. No. 124 at 26-27.)

*Rodriguez de Varon*, 175 F.3d at 945, Petitioner was not prejudiced by Chmelir's failure to argue for a role reduction at sentencing.

In addition to the absence of prejudice to Petitioner, it is clear that Chmelir was not deficient in failing to argue for a "minimal" or "minor" participant role reduction.  At the evidentiary hearing in this matter, Chmelir testified that he and Petitioner made a strategic decision to avoid arguing mitigating factors that would draw the Court's attention to Petitioner's role in the offense and instead to argue Petitioner's good works and law abiding life.  Chmelir was concerned that the Court would find that Petitioner had acted in a supervisory role and thus was ineligible for the safety valve under 18 U.S.C. § 3553(f) if Petitioner drew attention to his offense conduct at sentencing. Petitioner concurred in this strategy.  For the reasons discussed *supra* part III.B, the Court finds this testimony credible.

Because Chmelir's strategic decision to avoid arguing for a "minimal" or "minor" participant role reduction was one which reasonable counsel could have made, Chmelir was not deficient for failing to raise that argument at sentencing.  *See Chandler*, 218 F.3d at 1313 n.12 (noting that the test for ineffectiveness of counsel is whether counsel's conduct "was within the wide range of reasonable professional assistance" (quotation omitted)).  In the absence of deficient performance or prejudice to Petitioner, Chmelir was not ineffective for failing to argue for a "minimal" or "minor" participant role reduction.

### 2.  Procedurally and Substantively Unreasonable Sentence

Petitioner argues that Chmelir was deficient for failing to challenge the imposed 87 month sentence as procedurally and substantively unreasonable under 18 U.S.C. § 3553(a)(6) due to the disparity between his sentence and sentences given to similarly situated defendants.  (Doc. No. 4 at

25-26.)  This contention is wholly without merit.  Petitioner was scored under the lowest criminal history category, and his 87 month sentence was at the bottom of the guideline range of 87 - 108 months.  (Criminal Case Doc. No. 87 at 5.)  Although a sentence within the guideline range cannot be presumed to be reasonable, *United States v. Docampo*, 573 F.3d 1091, 1104 (11th Cir. 2009), Petitioner has not identified, and the Court does not find, any evidence or allegations suggest that Petitioner's sentence is in fact procedurally or substantively unreasonable.  Thus, Chmelir was not deficient for failing to object to the procedural and substantive unreasonableness of Petitioner's sentence.  *Strickland*, 466 U.S. at 697.

### 3.  "90-day Downward Departure" Pursuant to 8 U.S.C. § 1231(a)(1)(A)

Petitioner argues that Chmelir failed to request a 90-day downward departure under 8 U.S.C. § 1231(a)(1)(A), and that as a result, he faces three additional months of imprisonment.  (Doc. No. 4 at 27-28.)  The Court agrees with the Government that 8 U.S.C. § 1231(a)(1)(A) does not afford Petitioner relief here.  (Doc. No. 10 at 11.)  Section 1231(a)(1)(A) provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days."  Petitioner has not been ordered removed from the United States, and in any case, there is no authority that the 90 day removal period contemplated by Section 1231(a)(1)(A) affects Petitioner's term of imprisonment.  Accordingly, Petitioner's claim for relief based on 8 U.S.C. § 1231(a)(1)(A) is without merit.

### E.  Failure to Advise Petitioner of the Impact of U.S.S.G. § 1B1.3 on His Sentence

Petitioner argues that Chmelir was deficient for failing to advise him prior to executing the plea agreement about the impact of U.S.S.G. § 1B1.3 on his sentence.  (Doc. No. 12 at 5-7.)  In particular, Petitioner argues that counsel failed to correct his mistaken impression that uncharged

conduct and the circumstances of Petitioner's offense of conviction under U.S.S.G. § 1B1.3, if proved merely by a preponderance of the evidence rather than beyond a reasonable doubt, could impact his sentence.  (*Id.* at 5-6.)  This argument fails because Petitioner admitted in his plea agreement and during his plea colloquy to the offense conduct and attenuating circumstances upon which his sentence was based.  (Criminal Case Doc. No. 59 at 14-18; Criminal Case Doc. No. 124 at 26-27.)  Therefore, Petitioner was not prejudiced by his allegedly incorrect understanding of U.S.S.G. § 1B1.3.  Further, Chmelir was not deficient for failing to correct Petitioner's alleged misunderstanding of U.S.S.G. § 1B1.3 because there are no allegations or evidence of record that Chmelir was on notice, through Petitioner's statements or otherwise, that Petitioner incorrectly understood how his sentence would be calculated.  For these reasons, Chmelir was not ineffective for failing to advise Petitioner of the impact of U.S.S.G. § 1B1.3 on his sentence.

## IV. Breach of Plea Agreement

Petitioner argues that the Government breached the plea agreement by not filing a motion for downward departure due to substantial assistance pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e). (Doc. No. 1 at 21-22.) Petitioner's plea agreement stipulated that the Government would consider filing, but was not required to file, such a motion. (Criminal Case Doc. No. 32 at 4-5.) The plea agreement further provided "that the determination as to whether 'substantial assistance' has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida" and that Petitioner could not challenge that determination by collateral attack. (*Id.* at 5.)

Where, as here, the plea agreement contains no promise to file a substantial assistance motion, the Government's failure to file a substantial assistance motion is reviewed only for "a

-28-

constitutionally impermissible motivation, such as race, religion, or other arbitrary classification"
or the absence of a rational relation to a legitimate government purpose. *United States v. Davis*, 359
F. App'x 128, 130 (11th Cir. 2010) (citations omitted).  Petitioner's general assertions that the
Government breached the plea agreement by failing to move for downward departure, without more,
does not entitle him to relief or an evidentiary hearing. *See id.* ("[W]here a defendant claims merely
that he has provided substantial assistance, without anything else, supplemented only by 'additional
but generalized allegations of improper motive,' he will not be entitled to 'a remedy or even to
discovery or an evidentiary hearing.'" (quoting *Wade v. United States*, 504 U.S. 181, 186 (1992))).
Accordingly, the Court rejects Petitioner's claim that the Government breached his plea agreement
by failing to move for downward departure due to substantial assistance.

## V.  Defective Indictment

Petitioner argues that his Indictment was defective in violation of his Fifth Amendment rights
because he was indicted for conspiracy to possess with intent to distribute one or more kilograms
of heroin with no mention of the 5.791 kilograms of heroin or 1.962 kilograms of cocaine attributed
to him at sentencing.  (Doc. No. 12 at 9-13.)  An indictment charging a conspiracy under 21 U.S.C.
§ 846 "is sufficient if it alleges a conspiracy to distribute drugs, the time during which the
conspiracy was operative, and the statute allegedly violated." *United States v. Pease*, 240 F.3d 938,
943 (11th Cir. 2001) (citation omitted).  Petitioner's Indictment complies with these three
requirements.  (Criminal Case Doc. No. 1.)  Further, "drug type and quantity are not required to be
alleged in the indictment . . . as long as the statutory maximum punishment is not exceeded." *United
States v. Clay*, 376 F.3d 1296, 1301 (11th Cir. 2004) (citing *United States v. Sanchez*, 269 F.3d
1250, 1268 (11th Cir. 2001)).  Petitioner's sentence of 87 months fell below the statutory maximum

of life in prison set by 21 U.S.C. §§ 841(b)(1)(A) and 846.  Therefore, Petitioner's defective indictment claim is without merit.

## VI. Incorrect Calculation of Base Offense Level

Petitioner appears to argue that the Court incorrectly calculated his base offense level using U.S.S.G. § 2D1.1 instead of U.S.S.G. § 2X1.1 and that he was entitled to a three-level reduction in his base offense level under U.S.S.G. § 2X1.1(b)(2).  (Doc. No. 13 at 1-3.)  "The offense level for the crimes of conspiracy and attempt is the base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty."  *United States v. Rendon*, 354 F.3d 1320, 1330 (11th Cir. 2003) (quoting *United States v. Rodriguez*, 215 F.3d 110, 124 (1st Cir. 2000)); *accord* U.S.S.G. § 2X1.1(a).  Because Petitioner was convicted of conspiracy with intent to distribute one or more kilograms of heroin, (Criminal Case Doc. No. 87 at 1), Petitioner's base offense level was properly calculated using U.S.S.G. § 2D1.1, the sentencing guideline for drug crimes.

In addition, U.S.S.G. § 2X1.1(b)(2) does not apply here because Petitioner and his co-conspirators substantially completed the substantive acts forming the basis of the conspiracy for which Petitioner was charged.  *Compare* (Criminal Case Doc. No. 59 at 14-18 (setting forth three drug trafficking transactions in which Petitioner participated), *with* U.S.S.G. § 2X1.1(b)(2) (providing for a three-level reduction to the defendant's base offense level "unless the defendant or a co-conspirator completed all the acts the conspirators believed necessary on their part for the successful completion of the substantive offense or the circumstances demonstrate that the conspirators were about to complete all such acts but for apprehension or interruption by some

similar event beyond their control"). Accordingly, the Court rejects Petitioner's claim that his base offense level was incorrectly calculated.

## Conclusion

Based on the foregoing, the Court finds that Petitioner has not demonstrated that he is entitled to another evidentiary hearing or relief on any of the claims he has raised. Any allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

1.      The Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 by Petitioner Osvaldo Rojas-Sanchez (Doc. No. 4) is **DENIED**, and this case is **DISMISSED with prejudice**.

2.      The Clerk of the Court shall enter judgment accordingly and is directed to close this case.

3.      The Clerk of the Court is directed to file a copy of this Order in criminal case number 6:07-cr-95-Orl-19KRS and to terminate the Memorandum in Support of Petitioner's Section 2255 Motion to Set Aside, Vacate, or Correct Sentence (Criminal Case Doc. No. 120, filed June 25, 2010) pending in that case.

4.      This Court should grant an application for certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner has failed to make a substantial showing of the

denial of a constitutional right.[8]   Accordingly, a Certificate of Appealability is

**DENIED** in this case.

   **DONE AND ORDERED** at Orlando, Florida, this day of March 29, 2011.


PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT


Copies furnished to:

Osvaldo Rojas-Sanchez
Counsel of Record

---

   [8] Pursuant to the *Rules Governing Section 2255 Proceedings for the United States District Court*:

   The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue.  If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2).  If the court denies a certificate, a party may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.  A motion to reconsider a denial does not extend the time to appeal.

Rules Governing § 2255 Proceedings, Rule 11, 28 U.S.C. foll. § 2255.